UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BRIAN K. BENNETT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No. 4:17-CV-01583-SPM |
| ) | |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. §§ 405(g) for judicial review of the final decision of Defendant Nancy A. Berryhill, the Acting Commissioner of Social Security, denying the application of Plaintiff Brian K. Bennett ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, (the "Act"). The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 21). Because I find substantial evidence to support the decision denying benefits, I will affirm the Commissioner's denial of Plaintiff's application.

### I.  BACKGROUND

On December 20, 2013, Plaintiff applied for DIB, alleging that he has been unable to work since July 4, 2013. (Tr. 137). His application was initially denied on February 28, 2014. (Tr. 69). Plaintiff filed a Request for Hearing by Administrative Law Judge ("ALJ"). (Tr. 80). On May 6, 2016, following a hearing, the ALJ found Plaintiff was not under a "disability" as defined

in the Act. (Tr. 23). Plaintiff filed a Request for Review of Hearing Decision with the Social Security Administration's Appeals Council. (Tr. 7). On March 31, 2017, the Appeals Council declined to review the case. (Tr. 1-4). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

With regard to Plaintiff's testimony, work history, and medical records, the Court accepts the facts as provided by the parties in their respective statements of facts and responses. The Court will address specific facts related to the issues raised by Plaintiff as needed in the discussion below.

## II. STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"; if the claimant does not have a severe impairment, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c); *McCoy*, 648 F.3d at 611. At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner must assess the claimant's "residual functional capacity" ("RFC"), which is "the most a claimant can do despite [his or her] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)); *see also* 20 C.F.R. §§ 404.1520(e). At Step Four, the Commissioner determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his past relevant work, he is not disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.* At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the

claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012).

### III. THE ALJ'S DECISION

Following the administrative hearing, the ALJ denied Plaintiff's claim for benefits. The ALJ reviewed the medical evidence, which both supported and detracted from his claim, and concluded he was not disabled. More specifically, applying the foregoing five-step analysis, the ALJ here found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date, July 4, 2013; that Plaintiff has the severe impairments of degenerative disc disease, migraines, and depression; and that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404[1], Subpart P, Appendix 1. (Tr. 15). The ALJ found that Plaintiff has the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a), except that he can perform only simple, routine, repetitive tasks, not at a fast pace, such as an assembly line; he can occasionally balance, stoop, kneel, and climb ramps and stairs; he can never crouch, crawl, or climb ladders, ropes, or scaffolds; and he must use a hand held assistive device for ambulation but not for standing. (Tr. 17). The ALJ found that Plaintiff is unable to perform any of his past relevant

---

[1] Many Social Security regulations were amended effective March 27, 2017. Per 20 C.F.R. § 404.1527, the Court will use the regulations in effect at the time that this claim was filed.

4

work.[2] (Tr. 22). However, relying on the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff would be able to perform occupations including sealer (Dictionary of Occupational Titles ("DOT") No. 559.687-014, with approximately 45,000 jobs in the national economy) and semiconductor bonder (DOT No. 726.685-066, with approximately 40,000 jobs in the national economy). (Tr. 23). The ALJ concluded that Plaintiff had not been under a disability, as defined in the Act, from July 4, 2013, through the date of his decision. *Id.*

**IV. DISCUSSION**

The general issue before the Court is whether the final decision of the Commissioner is consistent with the SSA, regulations, and applicable law, and whether substantial evidence supports the determination that Plaintiff was not disabled. *See Onstead v. Sullivan*, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by substantial evidence). Even if there is substantial evidence that would support a decision opposite to that of the Commissioner, a reviewing court must affirm her decision as long as there is substantial evidence in favor of the Commissioner's position. *See Cox v. Barnhart*, 471 F.3d 902, 906 (8th Cir. 2006); *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). Plaintiff contends that the ALJ's decision is not based on substantial evidence for the following reasons: (1) that the ALJ erred in considering the credibility of Plaintiff's subjective complaints with the other evidence of record; and (2) that the ALJ's RFC is not supported by substantial evidence on the record because she incorrectly weighed the opinions of record, and failed to expand the record after discounting the medical opinions.

---

[2] Plaintiff's past relevant work included truck unloader and warehouse worker, and required frequent heavy lifting. (Tr. 49).

### A. Standard for Judicial Review

The standard of review is narrow. *Pearsall*, 274 F.3d at 1217. The decision of the Commissioner must be affirmed if it complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. §§ 405(g); 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). "Substantial evidence 'is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012) (quoting *Moore*, 572 F.3d at 522). In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Id.* However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

### B. The ALJ Conducted a Proper Credibility Analysis, Supported by Substantial Evidence

After reviewing the record, including hearing testimony, objective medical evidence, opinions, and other evidence, the ALJ found that Plaintiff's statements concerning his symptoms and their limiting effects were less than fully consistent with the evidence of record. (Tr. 17-22). When evaluating the credibility of a plaintiff's subjective complaints, the ALJ must consider

several factors: "(1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints." *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009) (citing *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) and *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)). The ALJ need not explicitly discuss each of these factors, but must set forth the inconsistencies in the record that cause her to reject the plaintiff's complaints. *Moore*, 572 F.3d at 524 (citations omitted). Courts must defer to an ALJ's credibility determination where the ALJ considers, but for good reasons discredits, a claimant's allegations of total disability. *See Casey v. Astrue*, 503 F.3d 687, 696 (8th Cir. 2007).

Plaintiff argues that the ALJ's credibility analysis consisted "primarily" of a single mistaken finding that Plaintiff's conservative course of treatment was not congruent with his report of disabling limitations. (Doc. 13 at 11-15). The Court disagrees. After review of the record, the Court finds that the ALJ conducted a proper credibility analysis, during which she considered and discussed several relevant credibility factors in detail. (Tr. 18-22). While the ALJ did note that Plaintiff's treatment was conservative, which she found to be inconsistent with his allegations of disabling pain, she also wove throughout her decision numerous additional inconsistencies of record, as the Court will discuss more thoroughly below.

The undersigned will first address Plaintiff's assertion that it was erroneous to characterize his treatment as conservative. Plaintiff seems to be arguing that any course of treatment that included surgery could never be considered conservative. However, the ALJ did not say that Plaintiff's course of treatment was entirely conservative in nature. She acknowledged Plaintiff's history of chronic back and neck pain, and then stated that his course of

7

treatment following his lumbar fusion surgery[3] had been "largely" conservative, noting that after the surgery his treatment consisted primarily of pain medications, cervical and lumbar injections, physical therapy, a home exercise program, and the use of a TENS unit. (Tr. 18-20).

Similar treatment for pain and degenerative disc disease has been characterized by the Eighth Circuit as "conservative treatment." *Singh v. Apfel*, 222 F.3d 448, 450 (8th Cir. 2000). Further, more than one of the health care practitioners who examined and treated Plaintiff deemed his treatment to be "conservative" in nature. (Tr. 234, 322). For example, Dr. Nabil Ahmad, a neurological specialist Plaintiff consulted on December 27, 2013, approximately five months after his surgery, noted in his treatment notes that Plaintiff stated that his pain medications "were effective," that he advised Plaintiff to start both physical therapy and a home exercise program to help with his lower back pain, and that he discussed this "conservative treatment plan and the back precautions in detail," with Plaintiff. (Tr. 322). Additionally, Dr. Benjamin Lampert noted that Plaintiff's "conservative treatments have included rest, OTC NSAIDS, chiropractor, home exercises, opioids, and muscle relaxants." (Tr. 234). Accordingly, Plaintiff's assertion that the ALJ was mistaken in characterizing his course of treatment as largely "conservative" is incorrect, and it was entirely proper for the ALJ to consider such conservative treatment as being inconsistent with Plaintiff's allegations of total disability. *See Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015) (holding that ALJ properly considered claimant's relatively conservative treatment history when evaluating credibility); *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (an ALJ may consider a plaintiff's conservative course of treatment as indicative that his symptoms are not disabling).

---

[3] On July 12, 2013, Plaintiff presented to Mercy Hospital where Dr. Scott Kutz performed a left sided facetectomy and foraminotomy at L5-S1 with decompression on the left L5-S1 nerve root, transforaminal interbody fusion at L5-S1, and insertion of a PEEK interbody spacer. (Tr. 266-67).

The ALJ also found that Plaintiff's subjective complaints were out of proportion to the objective medical evidence of record. For example, the ALJ noted that Plaintiff reported improved pain levels after his surgery, and that he seemed to have responded well to treatment. (Tr. 18). His treatment records indicate that following surgery, his grade 1 spondylolisthesis[4] was "significantly" reduced, and he was discharged in "good condition" with instructions to avoid lifting and strenuous exercise for two weeks. (Tr. 266-270). Further, at follow up examinations over the next several months, while Plaintiff had some positive findings such as tenderness to palpation and some limited range of motion, he also showed full muscle strength, and was repeatedly noted to appear "comfortable" on examination. (Tr. 18, 275, 318-320, 323, 341, 345, 354, 359). The ALJ also noted that while records from several visits to his primary care providers showed some gait difficulties, decreased range of motion, and occasional muscle spasm in his lumbar spine, no other abnormalities were noted that would support Plaintiff's allegations of total disability. (Tr. 19, 412, 417, 423, 433, 438, 550).

The ALJ noted several other instances where Plaintiff's allegations of total disability were inconsistent with the notes in his treatment record. For example, on November 4, 2013, Plaintiff sought medical treatment because he had been out bow hunting when he slipped on a log and fell on his back. (Tr. 353). Upon examination, nurse practitioner Carol Teague ("Nurse Teague") noted that he appeared comfortable, and his station and spine stability was "normal." (Tr. 354). On July 1, 2015, Plaintiff sought treatment from Nurse Teague for a rash after clearing poison ivy from around his mailbox, and at that visit he did not report any back pain. (Tr. 414). At that same visit, Nurse Teague discussed with Plaintiff the importance of getting more exercise, both in order to control his blood pressure as well as to increase his strength and

---

[4] Spondylolisthesis is the forward displacement of one vertebra over another, usually due to a developmental defect. *Dorland's Illustrated Medical Dictionary* 547 (32nd ed. 2012).

flexibility. (Tr. 415). Nurse Teague, as well as Plaintiff's other physicians had, on numerous occasions, recommended that Plaintiff undertake and consistently follow a home exercise plan. (Tr. 322, 327, 342, 377, 415, 417, 426, 429, 435, 444). Frequent instruction by health care providers to increase exercise levels is properly considered when evaluating the credibility of a claimant's allegations of total disability. *See Pelkey v. Barnhart*, 433 F.3d 575, 579 (8th Cir. 2006).

The ALJ also noted that an MRI scan on December 31, 2013, showed "normal alignment and no acute abnormality," and "[n]o significant disk pathology, central canal stenosis, or neural foraminal narrowing." (Tr. 18, 282-83). The ALJ further considered that when Plaintiff began treatment with a pain management specialist, Dr. Barbara Fulton, in March 2014, a physical examination revealed a "normal" lumbar spine, and negative straight leg raise testing in both legs. (Tr. 18, 456). Additionally, another MRI scan on June 20, 2014, showed only "moderate" degenerative disc disease at the C4-5 and C5-6 discs, and "mild" disc space narrowing with no stenosis at the C3-4 disc. (Tr. 463). Further, a diskography was performed on Plaintiff on June 16, 2014, at which Dr. Glenn A. Kunkel was unable to recreate his back pain with spinal cord stimulation. (Tr. 502). *See Goff*, 421 F.3d at 792 (holding that it was proper for the ALJ to consider unremarkable or mild objective findings in assessing credibility of subjective complaints). It was reasonable for the ALJ to consider the above discussed findings in determining that Plaintiff's complaints were not fully credible.

The ALJ also reasonably found inconsistencies between Plaintiff's allegations of disabling pain and the reported intensity and frequency of pain as noted in his treatment records. (Tr. 18-19). For example, on October 1, 2013, Plaintiff was treated for a sore throat by Dr. Rachelle Gorrell, at which appointment he indicated that while he rated the pain in his throat as a

seven out of ten on an ascending scale of zero to ten, he reported no back or neck pain. (Tr. 346). Additionally, on November 14, 2015, Plaintiff presented to the Phelps County Regional Medical Center for treatment after he fell onto a tree branch, causing an abdominal wound. (Tr. 540). At that visit, he did not report any back pain, and was noted to have normal range of motion. *Id*. Further, in his Function Report, dated January 14, 2014, Plaintiff indicated that his pain rendered him unable to "go anywhere or do anything." (Tr. 179). However, ten days later, on January 24, 2014, Plaintiff visited the doctor to receive an influenza vaccine, and during his physical examination he reported his pain as zero on a zero to ten scale. (Tr. 362). Additionally, when Plaintiff sought treatment for an unrelated hand and finger issue on January 23, 2015, the examiner noted that Plaintiff was "in no apparent distress," that his gait was "normal," and he rated his back pain as a zero on an ascending zero to ten scale. (Tr. 380-382).

The ALJ found further inconsistencies in Plaintiff's reports about his medication regimen and their side effects. (Tr. 20). For example, Plaintiff testified that his medications made him drowsy (Tr. 20, 40), but his treatment records indicated that Plaintiff denied that his narcotic pain regimen was causing fatigue. (Tr. 457). Also, a toxicology screen performed on March 19, 2014, "did not show any of the oxycodone [Plaintiff] claimed he was taking." (Tr. 20, 470). The treatment notes indicate that while it is conceivable that Plaintiff could have run out of medication, Plaintiff did not indicate such had happened, and if he had been taking the oxycodone as prescribed, it would not have run out by that date. *Id*.

After careful review of the record, the Court finds that the ALJ adequately articulated the inconsistencies upon which she relied when discounting Plaintiff's allegations regarding the extent of his limitations, and that her findings are supported by substantial evidence in the record as a whole. The Court will therefore defer to that analysis. *See Casey*, 503 F.3d at 696 (courts

must defer to ALJ's credibility determination and will not disturb the decision of an ALJ who considers, but for good reasons discredits, a claimant's allegations of total disability).

### C. The RFC is Supported by Substantial Evidence

Plaintiff first argues that the ALJ's RFC is not supported by substantial evidence because the ALJ erred in not fully crediting the opinion of consulting examiner, Dr. David Volarich, and by not expressly discussing the limitations in Dr. Volarich's opinion that she did not credit. Dr. Volarich opined that Plaintiff could perform no bending, twisting, lifting, pushing, pulling, carrying, or climbing except as needed, that he could occasionally lift fifteen to twenty pounds, should lift no weight over his head, and should shift positions every thirty minutes. (Tr. 377).

A claimant's RFC is "the most a claimant can do despite her limitations." *Moore*, 572 F.3d at 523 (citing 20 C.F.R. § 404.1545(a)(1)). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). In this case, the ALJ conducted a review of Plaintiff's testimony and medical records, conducted an analysis of the consistency of his subjective complaints with the evidence of record, analyzed the medical opinions, and made the following findings regarding Plaintiff's RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except he can perform simple, routine, repetitive tasks, not at a fast pace, such as an assembly line; he can occasionally balance, stoop, kneel, and climb ramps and stairs; he can never crouch, crawl, or climb ladders, ropes, or scaffolds; and he must use a hand held assistive device for ambulation but not for standing.

(Tr. 17). Sedentary work is defined in 20 CFR § 404.1567(a) as involving sitting, with occasional walking and standing, and only "occasionally" lifting or carrying small items "like docket files, ledgers, and small tools," and never anything heavier than ten pounds.

Plaintiff argues that the ALJ should have included a limitation that Plaintiff could not sit or stand for more than thirty minutes at a time, needed to change positions frequently, and could not lift overhead or away from his body. The Commissioner argues, and the Court agrees, that "in essence, Plaintiff is arguing that the ALJ should have given controlling weight to Dr. Volarich's opinion." However, as a non-treating source, Dr. Volarich's opinion was not binding on the ALJ, as the relevant regulations expressly reserve assignment of controlling weight to the medical opinions of treating sources. *See* 20 C.F.R. § 404.1527. When a medical opinion is not from a treating source, the ALJ considers the following factors in determining the weight to be given to the opinion: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese v. Astrue*, 552 F.3d 728, 731 (8th Cir. 2009). The ALJ was required only to consider the opinion, and then articulate and explain the weight she assigned to it. *See* 20 C.F.R. § 404.1527

Plaintiff asserts that remand is required because the ALJ did not adequately explain the weight she assigned to Dr. Volarach's opinion, and cites to *McCadney v. Astrue*, 519 F.3d 764, 767 (8th Cir. 2008), for support. The Court disagrees that *McCadney* buttresses Plaintiff's argument. The court in *McCadney* acknowledged that an ALJ is free to discount a medical opinion if the record warrants such. *Id*. (citing *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007). In *McCadney*, the Eighth Circuit remanded the case not because the ALJ failed to adequately explain the weight assigned to the opinion at issue, but rather because the ALJ failed utterly to articulate what weight he assigned the medical opinion. *Id*. The *McCadney* court

13

explained that they must remand because, "[w]e simply cannot determine from this record . . . what weight, if any, the ALJ gave" to the opinion at issue. *Id*. In this case, unlike in *McCadney*, the ALJ considered Dr. Volarich's opinion, and expressly assigned it "partial weight."

The ALJ stated that the evidence in the medical record supported Dr. Volarich's opinion that Plaintiff should avoid all bending, twisting, lifting, pushing, pulling, carrying, climbing, and similar tasks, and should not handle weight greater than fifteen to twenty pounds on occasion. (Tr. 21). The ALJ went on to state that the RFC she assigned to Plaintiff was consistent with Dr. Volarich's own observations of Plaintiff during his examination in September 2014. *Id*. The ALJ noted that Dr. Volarich, in his examination notes, found that Plaintiff was able to flat foot walk, toe walk, heel walk, and tandem walk with no difficulty, and could squat fully and stand back upright. (Tr. 19). Dr. Volarich also noted that Plaintiff had full 5/5 strength[5] in his upper extremities and calves, with slightly reduced 4/5 strength in his hips, quadriceps, and hamstrings. *Id*. Dr. Volarich also opined that although he thought Plaintiff could not perform his past work, which required constant heavy lifting, he recommended that Plaintiff undergo a vocational assessment to determine what kind of work he could perform. (Tr. 21). The Court agrees that these observations and opinions support the ALJ's RFC finding. *See Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009) (citing *Flynn v. Astrue*, 513 F.3d 788, 793 (8th Cir. 2008) (finding substantial evidence existed to support the ALJ's RFC determination when physician found claimant had normal or full muscle strength and good mobility).

Furthermore, it can be inferred from the ALJ's decision that she did not credit Dr. Volarich's opinion that Plaintiff could not stay in one position for more than thirty minutes or lift

---

[5] When evaluating muscle strength, health care professionals commonly use an Oxford Scale to grade strength from zero to five, with five being full strength. UCSD Biochemical Genetics and Metabolomics Laboratory, Medical Research Council (MRC) Scale for Muscle Strength, http://ucsdbglab.org/tools/MuscleScales.htm (last visited Sept. 13, 2018).

overhead, and the undersigned sees no reason to remand simply to make that finding explicit. The ALJ did not merely describe Plaintiff's RFC in general terms, but made specific findings regarding which functions the ALJ found Plaintiff to have credible limitations. *See Depover v. Barnhart*, 349 F.3d 563 (8th Cir. 2003) (when an ALJ adopts some functional limitations but not others it can be inferred that the ALJ did not find claimant to be limited in the omitted areas). In addition, as discussed *supra*, the ALJ conducted a detailed review of Plaintiff's allegations and the medical record, and offered several reasons why she found some of Plaintiff's allegations not credible, suggesting that she considered and rejected the possibility that Plaintiff had limitations more significant than those the ALJ specifically identified in the RFC. (Tr. 18-21). The ALJ found that Plaintiff frequently gave subjective reports of disabling pain and limitations, but those reports were not supported by objective findings in the evidence of record. *Id.* Therefore, contrary to Plaintiff's assertion, the Court concludes that the ALJ gave good reasons, supported by substantial evidence, for partially discounting the opinion of Dr. Volarich, and she was required to do no more.

Plaintiff further argues that the RFC is not supported by substantial evidence because the ALJ, in addition to discounting Dr. Volarich's opinion, also discounted the opinions of his nurse practitioner, Nurse Teague, and his chiropractor, Dr. Emmett Reary ("Dr. Reary"), thus leaving the record bereft of medical opinion evidence on which the RFC could be based.

The ALJ assigned "little weight" to Nurse Teague's opinion. (Tr. 21). Nurse Teague opined that Plaintiff could never lift or carry any items, could only sit or stand approximately one hour and twenty minutes in an eight-hour work day, would need to take a one hour break every thirty minutes throughout the day, and would need to elevate his legs for six hours in an eight-hour work day. (Tr. 554-55). The ALJ found Nurse Teague's opinion to be inconsistent with

other substantial evidence of record, and to be based primarily on Plaintiff's subjective complaints. (Tr. 21). As noted by the ALJ, Nurse Teague indicated in her opinion that she completed the form "with input from Brian" during an appointment on November 25, 2015, and her opinion prefaces multiple statements with phrases such as "Brian states," or "Brian reports." (Tr. 553-55). *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) ("ALJ was entitled to give less weight to [the] opinion, because it was based largely on [claimant's] subjective complaints rather than on objective medical evidence."). Furthermore, her opinion is internally inconsistent, as the very restrictive limitations she imposed on Plaintiff are at odds with her observations that he had normal strength and reflexes, and some tenderness only with palpation of the lumbar spine. (Tr. 553). *See Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018) (the Commissioner may discount or disregard an opinion when it is internally inconsistent).

The ALJ also assigned "little weight" to the opinion of Plaintiff's chiropractor. (Tr. 21). Dr. Reary opined that Plaintiff could sit for 2 hours in an eight-hour work day, stand for less than two hours, and frequently lift no more than ten pounds. (Tr. 407). The ALJ found that the evidence of record does not support the physical limitations imposed in Dr. Reary's opinion. (Tr. 21). Dr. Reary further opined that Plaintiff could tolerate only low stress work, and would miss approximately four days of work per month. (Tr. 408). The ALJ discounted these opinions because they were "outside the chiropractor's expertise and treatment." (Tr. 21). *See* 20 C.F.R. § 416.927(d)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.").

The Court notes that Plaintiff does not appear to dispute the validity of the ALJ's decision to discount the opinions of Dr. Reary and Nurse Teague. Therefore, the Court will not

delve more deeply into whether the ALJ assigned proper weight to these opinions, other than to note that the ALJ appears to have properly assigned little weight to them, as they seem to be unsupported by the medical evidence of record, internally inconsistent, and based to a large extent on Plaintiff's subjective complaints. Plaintiff argues, rather, that because the ALJ discounted the opinions of Dr. Reary and Nurse Teague, as well as that of Dr. Volarich, the record was devoid of any medical opinion evidence upon which the ALJ could base her RFC assessment, and the ALJ had a duty to further develop the record. The Court disagrees. "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007). However, there is no requirement that an RFC finding be supported by a specific medical opinion, or any medical opinion at all. *See Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012). Furthermore, "[e]ven though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Cox*, 495 F.3d at 619-20.

Here, as an initial matter, the ALJ did not reject outright the opinions of Drs. Volarich and Reary, or that of Nurse Teague. She assigned "partial weight" to Dr. Volarich's opinion, and assigned "little weight" to the opinions of Dr. Reary and Nurse Teague. (Tr. 22). *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (considering a physician's opinion and deciding to give "little weight" to it is not equivalent to rejecting the opinion). Thus, they remained opinions of record as to Plaintiff's physical functional limitations, and the ALJ properly considered them and discounted the weight accorded them because she found them inconsistent with the evidence of record. However, after considering the record as a whole, the ALJ found Plaintiff less limited

than opined, and assigned a less restrictive RFC, acknowledging Plaintiff's symptoms as established by the medical record.

The ALJ conducted an independent review of the medical evidence, and devoted nearly four pages of her decision to a thorough recounting and analysis of the findings in the treatment records. (Tr. 17-20). Apart from opinion evidence, the record as a whole contained extensive treatment records, which provided more than adequate medical evidence of Plaintiff's ability to function in the workplace. (Exs. 1F, 2F, 3F, 4F, 5F, 6F, 7F, 8F, 9F, 11F, 12F, 14F, 15F, 17F, 18F, 19F, 20F). In the absence of medical opinion evidence, "medical records prepared by the most relevant treating physicians provide affirmative medical evidence supporting the ALJ's residual functional capacity findings." *Johnson v. Astrue*, 628 F.3d 991, 995 (8th Cir. 2011). With the medical record adequately developed, the ALJ was not required to order further consultative examinations or otherwise obtain additional medical evidence, and the failure to do so is not cause for reversal. *See KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 372-73 (8th Cir. 2016); 20 C.F.R. § 404.1519a(b); *see also Martise v. Astrue*, 641 F.3d 909, 926-27 (8th Cir. 2011) (The ALJ is required to order further medical examinations only if the existing medical record does not provide sufficient evidence to determine whether the claimant is disabled).

Finally, Plaintiff asserts that the Appeals Council erred in declining to review the ALJ's denial of disability, alleging that the new evidence Plaintiff submitted to the Council, an opinion from Dr. Hugh Schuetz, D.O. ("Dr. Schuetz"), dated June 22, 2016, (Tr. 558-560), was sufficient to alter the determination in his favor. "[T]he Appeals Council must evaluate the entire record, including any new and material evidence submitted to it after the ALJ's decision." *Perks*, 687 F.3d at 1093 (citing 20 C.F.R. sec. 404.970(b)). The Appeals Council did consider Dr. Schuetz's opinion when they denied review (Tr. 4). When the Appeals Council denies review of an ALJ's

decision after reviewing new evidence, "we do not evaluate the Appeals Council's decision to deny review, but rather we determine whether the record as a whole, including the new evidence, supports the ALJ's determination." *Cunningham v. Apfel*, 222 F.3d 496, 500 (8th Cir. 2000). Here, after reviewing Dr. Schuetz's opinion, dated June 22, 2016, and comparing it to the earlier opinion submitted by Nurse Teague dated January 14, 2016 (Tr. 552-555), which was part of the record considered by the ALJ, we conclude that Dr. Schuetz's opinion would not have changed the ALJ's determination. Upon comparison, the Court found that Dr. Schuetz's opinion is identical in every respect to the earlier opinion submitted by Nurse Teague, even down to the handwritten notes found in the margins. Therefore, his opinion contained no "new" or "material" information that could have changed the ALJ's decision in any way. Accordingly, the Court concludes that the ALJ's determination was supported by substantial evidence in the record as a whole, including the post-hearing opinion evidence from Dr. Schuetz.

In conclusion, the Court finds that the RFC is supported by substantial evidence. Because the treatment records, medical opinions, and other evidence of record, which were thoroughly reviewed by the ALJ and this Court, provide sufficient medical evidence to support the ALJ's RFC determination, the determination must stand. *See Steed v. Astrue*, 524 F.3d 872, 876.

### V. CONCLUSION

As noted earlier, the ALJ's decision should be affirmed "if it is supported by substantial evidence, which does not require a preponderance of the evidence but only enough that a reasonable person would find it adequate to support the decision, and the Commissioner applied the correct legal standards." *Turpin v. Colvin*, 750 F.3d 989, 992-93 (8th Cir. 2014). The Court cannot reverse merely because evidence also exists that could support a contrary outcome. *Id.* "As is true in many disability cases, there is no doubt that [claimant] is experiencing pain."

*Perkins v. Astrue*, 648 F.3d 892, 901 (8th Cir. 2011). However, "[w]hile pain may be disabling if it precludes a claimant from engaging in any form of substantial gainful activity, the mere fact that working may cause pain or discomfort does not mandate a finding of disability." *Perkins*, 648 F.3d at 900.

For all of the foregoing reasons, the Court finds that substantial evidence supports the ALJ's decision as a whole. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **AFFIRMED**.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 25th day of September, 2018.